UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY EVANS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1808** |
| **CMH HOMES, INC., ET AL.** | **SECTION: "G"** |

## ORDER AND REASONS

In this litigation, Plaintiff Mary Evans ("Plaintiff") brings claims against Defendant CMH Homes, Inc. d/b/a Freedom Homes Gonzalez, LA ("CMH Homes") for alleged defects in a manufactured home Plaintiff bought from CMH Homes.[1] Pending before the Court is CMH Homes' Motion to Stay Pending Arbitration.[2] The motion was filed on October 9, 2024, and set for submission on November 27, 2024.[3] Pursuant to Local Rule 7.5, any opposition to the motion was due eight days before the noticed submission date.[4] Plaintiff has not filed an opposition to the instant motion and therefore the motion is deemed unopposed. A federal district court may grant an unopposed motion if the motion has merit.[5] Having considered the motion, the memoranda in support, the record, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 1-1.

[2] Rec. Doc. 8.

[3] Rec. Doc. 8-3.

[4] *See* EDLA Local Rule 7.5.

[5] *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

1

## **I. Background**

On June 13, 2024, Plaintiff filed a Petition for Damages against Defendants CMH Homes, American Bankers Insurance Company of Florida ("American Bankers"), Tiara Hayes-Babbin ("Babbin"), and Erica Cargo ("Cargo").[6] Plaintiff alleges that there are defects in a manufactured home she bought from CMH Homes.[7] Plaintiff brings claims for return of funds paid, breach of warranty, tort and breach of contract arising from alleged defects in her manufactured home.[8]

On July 17, 2024, CMH Homes removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. Section 1332.[9] Plaintiff is a citizen of Louisiana.[10] CMH Homes is incorporated in Tennessee with its principal place of business is in Tennessee, and American Bankers is incorporated in Florida with its principal place of business in Florida.[11] CMH Homes asserts that Babbin and Cargo, both citizens of Louisiana, were fraudulently joined to defeat diversity.[12] American Bankers, Babbin, and Cargo also have not been served. The amount in controversy exceeds $75,000 as Plaintiff claims she is entitled to a full refund of the purchase price of the modular home ($89,390.65), in addition to damages.[13]

On October 9, 2024, CMH Homes filed the instant motion to compel arbitration.[14]

---

[6] Rec. Doc. 1-1.

[7] *Id.*

[8] *Id.*

[9] Rec. Doc. 1.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] Rec. Doc. 8.

Plaintiff has not filed an opposition to the instant motion and therefore the motion is deemed unopposed.

## II. CMH Homes' Arguments in Support of the Motion

CMH Homes moves this Court to compel Plaintiff to arbitrate her claims under the terms of the "Binding Dispute Resolution Agreement" ("Dispute Resolution Agreement") signed by Plaintiff when she purchased the manufactured home.[15] CMH Homes contends that the agreement contains a valid arbitration provision governed by the Federal Arbitration Act ("FAA").[16]

CMH Homes argues that the Dispute Resolution Agreement requires Plaintiff to arbitrate "all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action" against CMH Homes.[17] Finally, CMH Homes argues that no federal statute or policy renders the claims non-arbitrable.[18] Therefore, CMH Homes argues that this litigation should be stayed pending arbitration.[19]

## III. Legal Standard

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the Federal Arbitration Act was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[20] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the

---

[15] Rec. Doc. 8-1 at 2.

[16] *Id.* at 5.

[17] *Id.* at 7.

[18] *Id.* at 8.

[19] *Id.*

[20] 379 F.3d 159, 166 (5th Cir. 2004).

3

same footing as other contracts."[21] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[22]

There is a "strong federal policy in favor of enforcing arbitration agreements."[23] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[24]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[25]

### IV. Analysis

*A.   Whether the Federal Arbitration Act Applies to this Dispute*

In resolving the instant motion before the Court, it is first necessary to determine whether the FAA governs the dispute between Plaintiff and CMH Homes. The FAA, codified at 9 U.S.C. § 1, *et seq.*, provides the basis for the Court's inquiry. Section 2 of the FAA states that a "contract evidencing a transaction involving *commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."[26]

---

[21] *Id.*

[22] *Id.*

[23] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[24] 9 U.S.C. § 3.

[25] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (quoting *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[26] 9 U.S.C. § 2 (emphasis added).

"Commerce" under Section 1 of the FAA means "commerce among the several States or with foreign nations."[27] The U.S. Supreme Court has held that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause" in the United States Constitution.[28]

The instant suit involves a dispute between Plaintiff, a Louisiana citizen, and CMH Homes, a Tennessee corporation.[29] Plaintiff bought a manufactured home from CMH Homes.[30] In sum, Plaintiff and CMH Homes are citizens of different states who entered a contract. "[A] contract may involve commerce under the FAA if the parties engaged in the performance of contract activities are citizens of different states, where such a contract involves interstate travel of both personnel and payments."[31] Accordingly, the Court finds that the contract entails interstate commercial activity, and the FAA applies to the present dispute between Plaintiff and CMH Homes. The Court will now consider whether the arbitration provision in the Dispute Resolution Agreement is enforceable against Plaintiff.

## B.  *Enforceability of the Arbitration Provisions*

To determine if an arbitration clause is enforceable, the Fifth Circuit has established a two-step inquiry.[32] First, a court determines whether the parties agreed to arbitrate.[33] This first

---

[27] *Id.* § 1.

[28] *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

[29] Rec. Doc. 1.

[30] Rec. Doc. 1-1.

[31] *See Atl. Aviation, Inc. v. EBM Grp., Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994), *overruled on other grounds by Action Industries, Inc. v. U.S. Fidelity & Guar. Co.* 358 F.3d 337, 341 n.10 (5th Cir. 2004) (internal citations omitted).

[32] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[33] *Id.*

step itself is subdivided into two considerations: (a) whether there was a valid agreement to arbitrate and (b) whether the dispute in question falls within the scope of the arbitration clause.[34] If both questions are answered in the affirmative, the court moves on to the second step. Under the second step, a court determines whether "any federal statute or policy renders the claims nonarbitrable."[35]

### 1. Whether there was a Valid Agreement to Arbitrate

Under step 1(a) of the Fifth Circuit's two-step test, the Court must determine whether a valid agreement to arbitrate exists between the parties. In making this determination, courts apply "ordinary state-law principles that govern the formation of contracts."[36]

Under Louisiana law, a contract is "an agreement by two or more people whereby obligations are created, modified, or extinguished."[37] An "obligation cannot exist without a lawful cause."[38] "Cause is the reason why a party obligates himself."[39] Under Louisiana law, "[i]t is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[40]

Here, it is undisputed that Plaintiff consented to the Dispute Resolution Agreement, and

---

[34] *Id.*

[35] *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009).

[36] *Fleetwood Enterprises,* 280 F.3d at 1073 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[37] La. Civ. Code art. 1906.

[38] La. Civ. Code art. 1966.

[39] La. Civ. Code art. 1967.

[40] *Coleman v. Jim Walter Homes, Inc*. 2008–1221 (La.3/17/09); 6 So. 3d 179, 183.

Plaintiff does not argue that the agreement is not supported by a lawful cause. Therefore, Plaintiff consented to the Dispute Resolution Agreement's terms, and Plaintiff does not argue that any other issues affected the formation of the agreement in this case. Accordingly, the Court finds that the Dispute Resolution Agreement constitutes a valid agreement to arbitrate between Plaintiff and CMH Homes.

**2. Whether Plaintiff's Claims fall within the Arbitration Provisions**

Under step 1(b) of the Fifth Circuit's two-step test, the question is whether Plaintiff's claims fall within the scope of the Dispute Resolution Agreement's arbitration provision. Courts apply a strong presumption in favor of arbitrability when deciding whether a party's claims fall within the scope of an arbitration provision.[41] Any doubt about the arbitrability of a dispute should be resolved in favor of arbitration.[42] The party resisting arbitration bears the burden of proving that a dispute is not arbitrable.[43] To overcome the presumption in favor of arbitrability, clear evidence must exist that the parties did not intend the claim at issue to be arbitrated.[44]

In this case, the arbitration provision states:

> This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively,

---

[41] *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[42] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

[43] *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003).

[44] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the home, and (vii) the interpretation, scope, validity and enforceability of the Contract (collectively referred to as the "Claim" or (Claims").[45]

Plaintiff's breach of warranty, tort, and breach of contract claims clearly fall under the terms of this provision.

This case is not a close call but, even if it were, any doubts concerning the scope of an arbitration clause is resolved in favor of arbitrability.[46] Plaintiff has not attempted to overcome that strong presumption in favor of arbitrability and has failed to file any opposition to the instant motion. Therefore, the Court finds that Plaintiff's claims fall within the scope of the arbitration provision in the Dispute Resolution Agreement.

### 3. Whether any Federal Policy or Federal Statute Forecloses Arbitration of Plaintiff's EFTA Claims

Under Step 2 of the Fifth Circuit's two-part test, the Court determines whether any federal statute or policy renders a party's claims non-arbitrable.[47] Here, Plaintiff does not point to any federal statute or policy that would render Plaintiff's claims non-arbitrable. Because no federal policy or statute forecloses arbitration of Plaintiff's claims, the FAA therefore requires the Court to enforce the arbitration provision in the Dispute Resolution Agreement.

### V. Conclusion

Under Section 3 of the FAA, if a federal court determines that the parties' transaction entails interstate commerce and the FAA governs the litigation, a federal court has the authority

---

[45] Rec. Doc. 8-2 at 11.

[46] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[47] *Jones v. Halliburton Co.*, 583 F.3d at 234.

to stay the litigation pending arbitration.[48] As the Fifth Circuit observed, Section 3 of the FAA is mandatory because it provides that federal courts "*shall* on application of one of the parties stay the trial of the action."[49]

Accordingly,

**IT IS HEREBY ORDERED** that CMH Homes' Motion to Stay Pending Arbitration[50] is **GRANTED**. The above captioned matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

**NEW ORLEANS, LOUISIANA**, this  13th  day of December, 2024.

                                            **NANNETTE JOLIVETTE BROWN**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**

---

[48] 9 U.S.C. § 3.

[49] *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004).

[50] Rec. Doc. 8.